UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KATHERINE SHEETS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:12-CV-00065-APR |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant, ) | |

OPINION AND ORDER

This matter is before the court on the petition for judicial review filed by the plaintiff, Katherine Sheets, on November 26, 2012. For the following reasons, the decision of the Commissioner is **AFFIRMED**.

*Background*

The plaintiff, Katherine Sheets, filed an application for Social Security Income and Disability Insurance Benefits on June 7, 2010, alleging that she became disabled on May 15, 2007. (Tr. 23) Her application initially was denied on August 5, 2010, and was denied upon reconsideration on October 29, 2010. (Tr. 23) Sheets requested a hearing before an administrative law judge ("ALJ"), and a hearing was held on August 31, 2011, before ALJ Mario G. Silva. (Tr. 23) Sheets appeared and testified on her own behalf. (Tr. 37–79) Vocational Expert (VE) Thomas A. Gusloff also testified at the hearing. (Tr. 23) Sheets was represented by

1

counsel, James Balanoff. (Tr. 23) On September 22, 2011, the ALJ rendered a decision denying benefits. (Tr. 32) On September 18, 2012, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 3–8) Sheets filed this action for judicial review of the final decision of the Commissioner on November 26, 2012.

At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Sheets had not engaged in substantial gainful activity since May 15, 2007, her alleged onset date. (Tr. 25) At step two, the ALJ determined that Sheets had the following severe impairments: depression, posttraumatic stress disorder ("PTSD"), polyarthritis, degenerative joint disease of the right shoulder, gastroesophageal reflux disease ("GERD"), and obesity. (Tr. 25) The ALJ next found that Sheets' impairments did not meet or equal one of the listings in **20 C.F.R. Part 404, Subpart P, Appendix 1**. (Tr. 26)

The ALJ then determined that Sheets could perform less than a full range of light work in that

> claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand or walk for about six hours of an eight-hour workday, and sit for at least six hours of an eight-hour workday. She can never crawl or climb ladders, ropes, scaffolds, or stairs; but she may occasionally climb ramps, balance, stoop, kneel, or crouch. With regard to the right dominant extremity, she must never engage in overhead lifting; and with regard to her hands bilaterally, she is limited to frequent, but not constant, gross manipulation or fingering. She is to avoid concentrated exposure to extreme temperatures, excessive vibration, chemicals, and hazards (e.g. dangerous moving machinery or unprotected heights); and she is to avoid even moderate exposure to environmental irritants such as fumes, odors, dusts, or gases. Further, the claimant is limited to performing simple, routine, and repetitive tasks; work that does not require directing others or abstract though or planning; and work that involves on simple work-related decisions and routine workplace changes.

(Tr. 27–28) In determining the residual functional capacity ("RFC"), the ALJ followed a two-step process. (Tr. 28) First, the ALJ determined whether there was an underlying medically determinable physical or mental impairment. (Tr. 28) Second, the ALJ evaluated the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limited the claimant's functioning. (Tr. 28)

The ALJ explained that Sheets' medical impairments reasonably could be expected to produce some of her claimed symptoms. (Tr. 28) Sheets alleged disability resulting from osteoarthritis, degenerative joint disease of the shoulder, depression, and posttraumatic stress disorder. (Tr. 28) Sheets testified that "her body will not allow" her to work because of chronic pain. (Tr. 28) Further, Sheets stated that she did not use medication to treat her joint pain because it caused her unwanted side effects. (Tr. 28) Moreover, Sheets stated that depression plagued her for "her whole life" and that, on some days, she could not get out of bed. (Tr. 28) However, the ALJ found that Sheets' testimony concerning the intensity, persistence, and side of effects of her symptoms was not credible to the extent that it was inconsistent with the RFC. (Tr. 28)

In reaching his conclusion, the ALJ first examined the medical evidence related to Sheets' physical impairments. (Tr. 28) Sheets' history of chest and abdominal pain began in 2004 when she was diagnosed with Barrett's esophagus, and her complaints of heart pain continued through January 2007. (Tr. 28) In February 2009, Sheets complained of joint pain but admitted that medications helped her pain. (Tr. 28) In April 2010, John Diveris, M.D., diagnosed Sheets with osteoarthritis in her right shoulder after she complained of shoulder pain, muscle aches, joint pain, joint swelling, and joint stiffness. (Tr. 28) Sheets received

3

corticosteroid injections, a prescription for Naprosyn, and physical therapy, and it was noted that Sheets had "responded very nicely to [her prescribed treatment] in May 2010." (Tr. 29) In July 2010, Shaveen Parvez, M.D., conducted a consultative physical examination on Sheets to examine Sheets' complaints of pain in both knees, her back, and her right shoulder. (Tr. 29) Dr. Parvez observed that, aside from Sheets' inability to squat, she seemed comfortable while seated and "does not seem to be majorly restricted." (Tr. 29) Sheets received additional corticosteroid injections in January 2011 and March 2011. (Tr. 29) However, in August 2011, Sheets complained of pain at St. Anthony Medical Center, at which point she was diagnosed with a rotator cuff tear with impingement and chondromalacia of the glenohumeral joint. (Tr. 29)

Next, the ALJ reviewed the opinion evidence regarding Sheets' physical impairments, which he noted was "scarce." (Tr. 29) First, the ALJ considered the RFC assessment conducted in August 2010 by state agency medical consultant, J. Sands, M.D. (Tr. 29) The ALJ weighed Dr. Sands' opinion to the extent that it was consistent with objective medical evidence. (Tr. 29) Specifically, the ALJ agreed with the limitation to work at the light exertional level and occasional postural restrictions, however, the ALJ found that additional environmental and postural limitations were needed. (Tr. 29)

Second, the ALJ assessed the opinion of Belinda Hubert, Ph.D. (Tr. 29) Medical records from August 2011 detailed that Dr. Hubert was treating Sheets for depression, PTSD, and chronic pain. (Tr. 29) In September 2011, Dr. Hubert performed an evaluation of Sheets' ability to do work-related activities. (Tr. 29) Dr. Hubert noted that Sheets, "suffers significant stress-related deteriorations in ability to function, make decisions, [and] remember [due to] chronic pain, major depression, and panic disorder." (Tr. 29). The ALJ determined that there was

4

"essentially no objective medical evidence in the record to support such extreme restrictions," because Sheets visited a mental health specialist only once and took anti-depressants for a little over one year. (Tr. 29) Nonetheless, in formulating his decision, the ALJ gave significant consideration to Sheets' testimony regarding her claimed mental impairments and the side effects of her medication, and the ALJ limited Sheets to performing simple, routine, and repetitive tasks. (Tr. 30)

After reviewing Sheets' physical impairments, the ALJ found that multiple factors weighed against the credibility of Sheets' statements regarding the severity of her impairments. (Tr. 30) First, no examining or treating physicians determined that Sheets was disabled or had limitations greater than those in the RFC. (Tr. 30) The treatment records revealed that the restrictions placed on Sheets by her treating doctor were inconsistent with Sheets' allegations of totally disabling pain. (Tr. 30) Second, Sheets responded well to her treatment, including her medications, physical therapy, and diet. (Tr. 30) She also testified that her medications kept her diabetes under control and that her shoulder surgery helped her maintain her ability to perform household chores. (Tr. 30) Third, Sheets waited to undergo a substantial procedure on her right arm for five years, despite alleging severe disabling pain. (Tr. 30) To explain her failure to seek treatment earlier, she testified that she was, "afraid of doctors . . . afraid of what they might say to me." (Tr. 30). Fourth, the record did not clearly establish that Sheets' alleged symptoms imposed significant limitations on her ability to work because Sheets testified that her job loss was caused by the economic downturn and not by her impairments. (Tr. 30) Further, the ALJ considered Sheets' testimony that six months after her alleged onset date, she only "probably" would have been unable to resume past work. (Tr. 30) In addition, the ALJ noted that if Sheets

5

was willing, but unable to work, she likely would not have waited four years after being laid off to apply for disability benefits. (Tr. 30)

The ALJ also was influenced by Sheets' testimony that she continued to receive unemployment benefits six months after her alleged onset date. (Tr. 30) The collection of unemployment benefits affirms that a recipient was "ready, willing, and *able* to accept employment and perform the work." (Tr. 30) (emphasis in the original). The ALJ also considered the testimony of Denise Burkhalter, Sheets' stepmother, and found it to be consistent with Sheets' testimony. (Tr. 31) Due to the consistency, the ALJ discounted the credibility of Burkhalter's testimony for the same reasons he discounted Sheets'. (Tr. 31) Overall, in consideration of the previous factors, objective medical evidence, opinion evidence, and Sheets' testimony, the ALJ found that Sheets' impairments did not prevent her from participating in basic work-related activities. (Tr. 31)

At step five, the ALJ concluded that Sheets could not perform past relevant work as a laboratory tester or laboratory supervisor. (Tr. 31) However, the ALJ identified other jobs that Sheets could perform, including a marker for retail (6,000 jobs regionally), mail clerk (2,000 jobs regionally), and cafeteria attendant (5,000 jobs regionally). (Tr. 31) The ALJ noted that he relied on the VE's testimony to reach these conclusions. (Tr. 31)

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive.");

*Pepper v. Colvin*, 712 F.3d 351, 361–362 (7th Cir. 2013); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005); *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 852 (1972) (*quoting* *Consolidated Edison Company v. NRLB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L.Ed.2d 140 (1938)); *See also* *Pepper,* 712 F.3d at 361–362; *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013)*; Rice v. Barnhart*, 384 F.3d 363, 368–369 (7th Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539.

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A).** The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § § 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. § § 404.1520(b), 416.920(b).** If she is, the claimant is not disabled and the evaluation process is

7

over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § § 404.1520(c), 416.920(c).** Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1.** If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § § 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1520(f), 416.920(f).**

Sheets complains that the ALJ's decision was not supported by substantial evidence. She argues that this was due in part to the ALJ's erroneous credibility determination and his failure to incorporate all of her alleged limitations into the RFC assessment. Her arguments seemingly overlap, as she relies on her testimony and reports of pain as the basis for greater restrictions, pointing to some objective medical evidence in the form of diagnoses, that may cause the type of pain to which she testified.

An ALJ's credibility finding will not be overruled unless it is patently wrong. *Powers v. Apfel*, 207 F.3d 431, 435-36 (7th Cir. 2000). A decision is patently wrong if it "lacks any

explanation or support." ***Elder v. Astrue***, 529 F.3d 408, 414 (7th Cir. 2008). The ALJ is ultimately in the best position to observe the witnesses and evaluate their credibility. ***Powers***, 207 F.3d at 435-36. Yet, to receive deference, the ALJ's credibility determination must acknowledge specific findings and explain them "in a way that affords meaningful review." ***Steele v. Barnhart***, 290 F.3d 936, 942 (7th Cir. 2002).

Before reaching a credibility determination, the ALJ must consider all of the claimant's, "symptoms, including pain, and the extent to which [the claimant's symptoms] can reasonably be accepted as consistent with the objective medical evidence and other evidence". **20 C.F.R. § 404.1529(a).** Additionally, where a claimant's subjective complaints could reasonably produce the alleged symptoms, the ALJ must analyze the intensity and persistence of the claimant's symptoms through the use of, "medical history, the medical signs and laboratory findings, and statements from [the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. § 404.1529(c)**; ***Schmidt v. Astrue***, 496 F.3d 833, 843 (7th Cir. 2007). *See also* ***Indoranto v. Barnhart***, 374 F.3d 470, 474 (7th Cir. 2004).

Furthermore, an ALJ must provide more than a, "single, conclusory statement . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specified to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reasons for that weight," when credibility is partially discounted due to inconsistencies between the claimant's complaints of pain and the medical evidence. **SSR 96–7p**, at *2. *See* ***Zurawski v. Halter***, 245 F.3d 881, 887–88 (7th Cir. 2001).

9

Sheets contends that the ALJ erred in his credibility determination by failing to properly consider her subjective complaints of pain where medically determined impairments could reasonably be expected to produce such pain. In *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004), the ALJ discredited testimony that the claimant took hot baths several times a day to alleviate pain merely by stating that the claimant's testimony was uncorroborated by medical evidence. *Indoranto*, 374 F.3d at 474. The court held that the ALJ's credibility determination was not supported by substantial evidence and reversed the finding. *Indoranto*, 374 F.3d at 475. The court elaborated that the record was filled with objective medical evidence supporting the claimant's statements and that there was, "nothing incredible or inconsistent about [her] statements." *Indoranto*, 374 F.3d at 475. Similarly, Sheets alleges that her subjective complaints of pain were not properly considered in light of objective medical evidence. However, unlike *Indoranto*, the ALJ considered Sheets' complaints of pain and found a number of factors and inconsistencies weighing against Sheets' credibility. (Tr. 30)

Sheets first argues that the medical notes show that her conditions were progressing. Her 2009 blood tests for Rheumatoid Arthritis led to a diagnosis of Osteoarthritis. A shoulder x-ray showed degenerative osteophyte and despite injections, she continued to complain of chronic pain. Her medical notes revealed that she experienced pain all over and that she had joint swelling and stiffness as late as April 2010. A subsequent bone density test showed that her bone density was "below young normal". She also went to the emergency room in February 2011 complaining of pain and swelling in both of her hands and was unable to move her fingers. In June 2011, she reported increasing pain in her shoulder. Sheets underwent an MRI that

revealed acromioclavicular degenerative changes, fluid, a tear in her tendon, and tendinosis, and she agreed to undergo surgery as a result.

However, the record reflects that the ALJ considered all of this as he set forth her medical treatment in a chronological time line. The ALJ noted Sheets' complaints that her body would not allow her to work. He summarized the medical evidence, explaining that the medical notes included reports of pain, that she was diagnosed with osteoarthritis of the shoulder, that she continued to complain of pain despite receiving injections, and that an MRI revealed degenerative changes, fluid, and tendinitis, leading Sheets to agree to shoulder surgery. After addressing the objective medical evidence, the ALJ explained that no doctor, treating or consultative, who considered her physical conditions determined that Sheets was more limited in her abilities than he found. This weighed against her credibility. For example, he explained that the consultative physician noted that Sheets could ambulate normally, had a steady gait, and appeared stable and comfortable. The ALJ further commented that given her complaints of disabling pain, it would be logical that one of the doctors would have agreed that such disabling restrictions were necessary.

The ALJ did not stop there. He went on to address how Sheets' treatment contradicted her complaints of pain. In 2010, her medical notes reflected that she responded nicely to her prescribed treatment with symptom improvement. Sheets also testified that her shoulder surgery resulted in improvements in her abilities. Following her surgery she was able to perform some household chores. She also stated that her medications kept her diabetes under control. The ALJ also commented that it was counterintuitive to believe that someone who suffered such severe

pain as Sheets testified to experiencing would not seek medical treatment for the simple reason that she was scared of what the doctors might tell her.

The record reflects that the ALJ considered that Sheets' condition was worsening because he set forth her medical history in a chronological time line. However, even if her condition was becoming worse, this does not equate to a finding that her condition was as debilitating as she testified. Her own testimony and the notes of her doctors revealed that her treatment was helpful. None of the doctors believed such severe restrictions were necessary, and the ALJ's limitations were consistent or more restrictive than all of the medical opinions of record. Sheets has not identified any subsequent notes that suggest that her shoulder surgery or other treatment was not successful or that any doctors noted restrictions that would lead to a finding of disability. Although Sheets argues that she testified to the need to elevate her feet, which would have exempted her from all gainful employment, this restriction was not noted by any doctors, and the consultative physician stated that Sheets was able to ambulate normally and appeared stable and comfortable during the consultative examination. The ALJ gave a very detailed explanation of the reasons supporting his credibility finding and supported it with objective medical evidence. The court does not find that the ALJ's credibility determination was patently flawed.

Sheets separately argues that the ALJ failed to consider some of the objective medical evidence that would support her complaints of pain. Specifically, she argues that the ALJ failed to incorporate her shoulder, arm, and hand limitations properly, and her testimony that she needed to lay down for 6 hours out of an 8 hour workday. However, this relates back to the credibility finding. The only evidence of such severe restrictions was Sheets' own statements. None of the doctors opined that she could sit for only 20-30 minutes at a time or that she needed

to elevate her feet. Although Sheets has identified diagnoses that could support such restrictions, namely arthritis, this does not equate to finding that she was so restricted. Certainly, Sheets was diagnosed with conditions that would impact her ability to move her fingers, arm, and shoulders, and may cause swelling. However, the ALJ did a thorough job explaining why he did not find that these conditions limited Sheets in the manner to which she testified. Sheets has not identified any objective medical evidence that the ALJ overlooked and, as explained above, the ALJ's decision to discount her complaints of pain was well explained.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 15th day of September, 2014

/s/ Andrew P. Rodovich
United States Magistrate Judge